UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

WILTON REASSURANCE LIFE COMPANY OF
NEW YORK,
                                  :
                 Plaintiff,           13 Civ. 5536 (RJS)(HBP)
                                  :
     -against-                        REPORT AND
                                  :   RECOMMENDATION[1]
WALTER F. GARBRECHT, JR.,
individually, and on behalf of    :
D.G., a minor, JOYCE REGINA
MAISANO, RENEE A. MAISANO-CUZZO,  :
GAIL DARDANO, SUZANNE SCHMIDT and
JOSHUA RODRIGUEZ,                 :
                 Defendants.
                                  :
----------------------------------X


          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE RICHARD J. SULLIVAN, United States

District Judge,


_____

          [1]As discussed in the text, the motion addressed herein
seeks, in part, an entry of default judgment against two
defendants, Joyce Regina Maisano and Suzanne Schmidt, who have
not appeared or answered in this matter.  Although all other
parties have consented to my exercising plenary jurisdiction in
this matter pursuant to 18 U.S.C. § 636(c) (see Docket Item 19),
neither Maisano nor Schmidt have consented.  Because all parties
have not consented to my exercising plenary jurisdiction in this
matter, I believe it is more appropriate to address this
dispositive motion by way of a Report and Recommendation.

I. <u>Introduction</u>

      Pursuant to the Federal Interpleader Act, 28 U.S.C. § 1335, and Fed.R.Civ.P. 22, Wilton Reassurance Life Company of New York ("Wilton") brought this interpleader action to resolve competing claims to the proceeds of a life insurance policy.  The competing claimants contest the validity of two change-of-beneficiary forms purportedly executed by the decedent before her death.  The first change-of-beneficiary form, which is not challenged, named defendants Walter F. Garbrecht, Jr., minor D.G., Joshua Rodriguez and Renee Maisano-Cuzzo as beneficiaries.  The second, disputed, form allegedly added defendants Joyce Regina Maisano, Gail Dardano and Suzanne Schmidt as beneficiaries.  Wilton never accepted the second form and allegedly sent the insured three notices instructing her how to properly add beneficiaries of the policy.  Arguing that the second form should be effective, Dardano states that she believes the insured intended to add the beneficiaries and that the insured never received the first two notices from Wilton.

      By notice of motion, dated June 17, 2014 (Docket Item 25), defendants Garbrecht, D.G. and Rodriguez move for an entry of default and default judgment against defendants Maisano and Schmidt and summary judgment against Dardano, directing that the

proceeds of the policy be distributed only to Garbrecht, D.G., Rodriguez and Maisano-Cuzzo in accordance with the first accepted change-of-beneficiary request.  For the reasons set forth below, I respectfully recommend that the motion be granted.

II.  Facts

    A.  The Change-of-Beneficiary
       Notices in Issue

     In September 2000, North American Company for Life and Health Insurance of New York ("NANY") issued life insurance policy No. LN01015420, on the life of Donna A. Garbrecht (the "insured") in the amount of $200,000 (Complaint, dated Aug. 7, 2013, (Docket Item 1) ("Compl.") ¶¶ 11-12).  The insured was the owner of the policy, and her son, Walter Garbrecht, and the insured's fiancé, Lawrence Rubino, were designated as the primary beneficiaries, each entitled to an equal share of the proceeds (Compl., ¶ 15).

     On April 13, 2001, NANY approved the insured's request to change the primary beneficiary to Garbrecht and the contingent beneficiary to D.G., Garbrecht's son and the insured's grandson (Compl., ¶¶ 8, 16-17).  On March 23, 2004, NANY endorsed the insured's request to change the primary beneficiaries back to Garbrecht and Rubino to share equally (Compl., ¶¶ 18-19).

However, on September 15, 2006, NANY rejected a second request by the insured to change the primary beneficiaries to D.G. and Rubino because the insured failed to date her request (Compl., ¶¶ 20-21).

Thereafter, Wilton succeeded NANY as the insurer of the policy (Compl., ¶ 1).  After Wilton rejected a series of flawed change requests by the insured,[2] on January 21, 2009, Wilton processed her request to change the allocation of the proceeds to the beneficiaries as follows:  62.5% to Garbrecht and 12.5% each to D.G., the insured's grandson, Joshua Rodriguez, and the insured's niece, Renee Maisano-Cuzzo (Compl., ¶¶ 28-29 and Exhibits 15 & 16 annexed thereto).[3]  This was the last change request accepted by Wilton (the "Last Accepted Change Request") (Compl., Ex. 16).

Some time between January 2009 and March 2010, the insured submitted an undated request to Wilton with a handwritten

---

[2]On May 27, 2008, Wilton rejected a change request because it apportioned the beneficiaries' shares by monetary amounts instead of percentages (Compl., ¶¶ 22-23).  On October 24, 2008, Wilton refused to process a new change request because it was missing information (Compl., ¶¶ 24-25).  On December 31, 2008, Wilton again rejected a third change request because information was missing and the percentages did not total 100% (Compl., ¶¶ 26-27).

[3]Based on a total death benefit of $200,000, this amounts to $125,000 to Garbrecht and $25,000 each to D.G., Rodriguez and Maisano-Cuzzo.

attachment listing the names of each beneficiary and the amount
of proceeds they were to receive (the "Rejected Change Request")
(Compl., ¶¶ 29-30 and Exhibit 17 annexed thereto).  The request
sought to provide (1) $50,000 (25%) each to Garbrecht and the
insured's sister, Joyce Maisano, (2) $25,000 (12.5%) each to
D.G., Rodriguez and Maisano-Cuzzo, (3) $15,000 (7.5%) to the
insured's friend Gail Dardano and (4) $10,000 (5%) to the in-
sured's friend Suzanne Schmidt (Compl., Ex. 17).

Wilton did not process the request (Compl., ¶ 31).
Instead, it sent identical letters to the insured on March 18,
2010 and December 29, 2010, informing her that she must complete,
sign and date the appropriate form in order for the beneficiary
change to take effect (Compl., ¶¶ 31-32).  On October 10, 2011,
Wilton again informed the insured that her request had not been
processed because (1) she failed to provide the second dated and
signed page of the change request form, (2) she failed to sign
and date the form as directed and (3) she allocated the funds by
monetary values instead of percentages (Compl., ¶ 33 and Exhibit
20 annexed thereto).  The insurer provided the insured with blank
change request forms which stated that the forms were "[i]ncom-
plete without all [p]ages," indicated that the form included two
pages on the bottom of both pages and included a space for the
insured's signature and the date on the second page (see Compl.,

5

Exs. 15 & 17).  Wilton instructed the insurer that the entire completed form had to be submitted for the change to be effective (Compl., Ex. 20).  The insured did not take any of the actions specified in the October 10, 2011 notice (Compl., ¶ 34).

The insured died on December 27, 2012 (Compl., ¶ 35 and Exhibit 21 annexed thereto).  Each of the defendants submitted a claim for benefits under the policy (Compl., ¶¶ 36-42).  Wilton informed Maisano, Schmidt and Dardano that their claims were being denied because they were not identified in the Last Accepted Change Request; Wilton also requested that they withdraw their claims (Compl., ¶¶ 43-45).  Each refused to withdraw her claim for benefits and stated her belief that the insured intended her to be a beneficiary of the policy (Compl., ¶¶ 46-48).  Garbrecht opposed Maisano's claim for benefits (Compl., ¶ 49).  Wilton was unable to determine to whom the death benefits are owed (Compl., ¶ 53).

B.  Proceedings
    to Date

Wilton brought suit seeking a judgment (1) directing Wilton to deposit the death benefit and interest with the Clerk of Court, (2) directing defendants to interplead each other, (3) discharging Wilton from further liability and enjoining defen-

dants from commencing any actions against it and (4) awarding
Wilton fees and costs from the policy proceeds (Compl., at 9-10).
Thereafter, Wilton properly served the summons, complaint, Rule
7.1 statement and exhibits on all Defendants.[4]

Only defendants Garbrecht, D.G. and Rodriguez answered
and cross-claimed seeking (1) disbursement of the funds in
accordance with the Last Accepted Change Request, (2) payment of
fees and costs by Dardano, Maisano and Schmidt should they
contest the case and (3) an order enjoining defendants from
bringing suit against Wilton, Garbrecht, D.G. or Rodriguez
regarding rights under the policy (Amended Answer and Cross-
Claim, dated Oct. 16, 2013 (Docket Item 10) ("Garbrecht Am.
Answer")).   Dardano also answered, claiming that (1) she believes
the insured did not receive the May 18, 2010 and December 29,
2010 letters,[5] (2) she knows that the insured repeatedly changed

_____

[4]See Aff. of Serv. on Garbrecht, dated Aug. 19, 2013 (Docket
Item 6); Aff. of Serv. on Garbrecht, on behalf of D.G., dated
Aug. 19, 2013 (annexed as Attachment 1 to Docket Item 6); Aff. of
Serv. on Maisano-Cuzzo, dated Aug. 16, 2013 (Docket Item 9); Aff.
of Serv. on Rodriguez, dated Aug. 19, 2013 (Docket Item 5);
Return of Serv. on Dardano, dated Aug. 15, 2013 (Docket Item 7);
Return of Serv. on Maisano, dated Aug. 19, 2013 (Docket Item 8);
Return of Serv. on Schmidt, dated Oct. 14, 2013 (Docket Item 12).

[5]In her Answer, Dardano does not deny plaintiff's assertion
that, by an October 10, 2011 letter, Wilton informed the insured
that the request was not processed and instructed her to resubmit
her request.  Pursuant to Fed.R.Civ.P. 8(b)(6), plaintiff's
assertion is deemed admitted.

her policy, but she believes that the insured meant for the Rejected Change Request to be effective and (3) she believes it was the insured's "dying wish" to provide for her sister, Maisano (Answer, dated Oct. 29, 2013, (Docket Item 14) ("Dardano Answer") at 1-2).  To date, neither Maisano nor Schmidt have appeared or answered in this action (Declaration of Vincent Gelardi in Support of Motion for Summary Judgment, dated June 17, 2014, (Docket Item 26) ("Gelardi Decl.") ¶ 11).  There is nothing in the record indicating that either has contacted the court in any way.[6]

On January 31, 2014, Wilton deposited the death benefit and accumulated interest (the "Funds"), totaling $205,547.04, with the Clerk of Court (Gelardi Decl., ¶ 3; Minute Entry for Dec. 13, 2013 on Docket Report for 13 Civ. 5536).  On February 4, 2014, I ordered that the Funds be deposited in an interest-bearing account and, subject to certain limitations, authorized the Clerk of Court to deduct a fee equal to 10% of the income earned (Order for Deposit in Interest-Bearing Account, dated Feb. 4, 2014 (Docket Item 21)).  The Funds were deposited in an interest-bearing account on February 20, 2014 (Gelardi Decl., ¶ 3).

---

[6]Plaintiff's counsel advises that Maisano told counsel's office that she would not appear in this action (Gelardi Decl., ¶ 10).

Defendants Garbrecht, D.G. and Rodriguez, by notice of motion (Docket Item 25), move for (1) entry and grant of default against Maisano and Schmidt (2) summary judgment against Dardano and (3) distribution of the Funds to Maisano-Cuzzo and themselves in accordance with the Last Accepted Change Request.  Movants properly served the motion on defendants Maisano-Cuzzo, Maisano, Dardano and Schmidt and plaintiff Wilton (Aff. of Serv., dated June 17, 2014 (Docket Item 28)).

III.  Analysis

    A.  Legal Standard
       for Default

The Court of Appeals for the Second Circuit set forth the rules applicable to the entry of default in City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 128-29 (2d Cir. 2011):

> "Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation." Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004).  Rule 55 provides a "two-step process" for the entry of judgment against a party who fails to defend:  first, the entry of a default, and second, the entry of a default judgment. New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005).
>
> The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff.  The entry of default is governed by Rule 55(a), which provides:

When a party against whom a judgment for affirma-
tive relief is sought has failed to plead or oth-
erwise defend, and that failure is shown by affi-
davit or otherwise, the clerk must enter the par-
ty's default.

Fed.R.Civ.P. 55(a).  Although Rule 55(a) contemplates
that entry of default is a ministerial step to be
performed by the clerk of court, see Pinaud v. Cnty. of
Suffolk, 52 F.3d 1139, 1152 n.11 (2d Cir. 1995) (de-
scribing "the entry of a default" as "largely a formal
matter" (internal quotation marks omitted)), a district
judge also possesses the inherent power to enter a
default, see Beller & Keller v. Tyler, 120 F.3d 21, 22
n.1 (2d Cir. 1997).  The entry of a default, while
establishing liability, "is not an admission of dam-
ages."  Finkel v. Romanowicz, 577 F.3d 79, 83 n.6 (2d
Cir. 2009).

     The second step, entry of a default judgment,
converts the defendant's admission of liability into a
final judgment that terminates the litigation and
awards the plaintiff any relief to which the court
decides it is entitled, to the extent permitted by Rule
54(c).  Under Rule 55(b), a default judgment ordinarily
must be entered by the district judge, rather than by
the clerk of court, except in certain circumstances
provided for by the rule and not present here.  A
district court is empowered under Rule 55(b)(2), in the
exercise of its discretion, to "conduct hearings or
make referrals" as may be necessary, inter alia, to
determine the amount of damages or establish the truth
of the plaintiff's allegations.  Fed.R.Civ.P.
55(b)(2)(B)-(C).  "A default judgment is a final action
by the district court in the litigation [and] one that
may be appealed."  Enron Oil Corp. v. Diakuhara, 10
F.3d 90, 95 (2d Cir. 1993).

     "After default has been entered, all of the well-

pleaded allegations in a complaint pertaining to liability are

deemed true."  Carlone v. Lion & the Bull Films, Inc., 861 F.

Supp. 2d 312, 319 (S.D.N.Y. 2012) (Oetken, D.J.), citing Transat-

lantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d

105, 108 (2d Cir. 1997).  However, the district court

> "need not agree that the alleged facts constitute a
> valid cause of action," Au Bon Pain Corp. v. Artect,
> Inc., 653 F.2d 61, 65 (2d Cir. 1981); rather, the
> Second Circuit has "suggested that, prior to entering
> default judgment, a district court is 'required to
> determine whether the [plaintiff's] allegations estab-
> lish [the defendant's] liability as a matter of law,'"
> City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d
> 114, 137 (2d Cir. 2011) (quoting Finkel, 577 F.3d at
> 84).

> "Accordingly, the Court must determine whether the
> well pleaded allegations in the Complaint, admitted by
> Defendants on this motion, are sufficient to establish
> liability for the claimed causes of action."  Rolex
> Watch U.S.A., Inc. v. Rolex Deli Corp., 11-CV-9321,
> 2012 WL 5177517, at *1 (S.D.N.Y. Oct. 18, 2012) (Jones,
> J.).

Broad. Music, Inc. v. Pamdh Enterprises, Inc., 13 Civ. 2255

(KMW), 2014 WL 2781846 at *2 (S.D.N.Y. June 19, 2014) (Wood,

D.J.) (brackets in original).

     "A default judgment is inappropriate where a plaintiff

has failed to state a cause of action against the allegedly

defaulting defendant, regardless of whether the defendant filed a

prompt response, or any response at all."  Young-Flynn v. Wright,

05 Civ. 1488 (LAK), 2007 WL 241332 at *24 (S.D.N.Y. Jan. 26,

2007) (Kaplan, D.J.), citing Kee v. Hasty, 01 Civ. 2123

(KMW)(DF), 2004 WL 807071 at *4 (S.D.N.Y. Apr. 14, 2004) (Free-

man, M.J.) (Report and Recommendation); see also CPF Premium

Funding, Inc. v. Ferrarini, 95 Civ. 4621 (CSH), 1997 WL 158361 at
*14 (S.D.N.Y. Apr. 3, 1997) (Haight, D.J.).

     B.  Legal Standard
        for Summary Judgment

     The standards applicable to a motion for summary
judgment are well-settled and require only brief review.

     Summary judgment may be granted only where there
is no genuine issue as to any material fact and the
moving party . . . is entitled to a judgment as a
matter of law.  Fed.R.Civ.P. 56(c).  In ruling on a
motion for summary judgment, a court must resolve all
ambiguities and draw all factual inferences in favor of
the nonmoving party.  Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202
(1986).  To grant the motion, the court must determine
that there is no genuine issue of material fact to be
tried.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23,
106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  A genuine
factual issue derives from the "evidence [being] such
that a reasonable jury could return a verdict for the
nonmoving party."  Anderson, 477 U.S. at 248, 106 S.Ct.
2505.  The nonmoving party cannot defeat summary judg-
ment by "simply show[ing] that there is some metaphysi-
cal doubt as to the material facts," Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586,
106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), or by a factual
argument based on "conjecture or surmise," Bryant v.
Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  The Su-
preme Court teaches that "all that is required [from a
nonmoving party] is that sufficient evidence supporting
the claimed factual dispute be shown to require a jury
or judge to resolve the parties' differing versions of
the truth at trial."  First Nat'l Bank of Ariz. v.
Cities Serv. Co., 391 U.S. 253, 288-89, 88 S.Ct. 1575,
20 L.Ed.2d 569 (1968); see also Hunt v. Cromartie, 526
U.S. 541, 552, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999).
It is a settled rule that "[c]redibility assessments,
choices between conflicting versions of the events, and
the weighing of evidence are matters for the jury, not

for the court on a motion for summary judgment."
Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).

McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006); accord Hill
v. Curcione, 657 F.3d 116, 124 (2d Cir. 2011); Jeffreys v. City
of New York, 426 F.3d 549, 553-54 (2d Cir. 2005); Powell v. Nat'l
Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004).

     In deciding whether a motion for summary judgment
should be granted, courts "construe the facts in the light most
favorable to the non-moving party and must resolve all ambigu-
ities and draw all reasonable inferences against the movant."
Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d
Cir. 2003).  "Material facts are those which 'might affect the
outcome of the suit under the governing law,' and a dispute is
'genuine' if 'the evidence is such that a reasonable jury could
return a verdict for the nonmoving party.'"  Copolla v. Bear
Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007), quoting Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord McCarthy
v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007).
"'[I]n ruling on a motion for summary judgment, a judge must ask
himself not whether he thinks the evidence unmistakably favors
one side or the other but whether a fair-minded jury could return
a verdict for the [non-movant] on the evidence presented[.]'"
Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 788 (2d Cir.

13

2007), quoting Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 298 (2d Cir. 1996).

Local Rule 56.1(a) requires that a party moving for summary judgment submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  A non-moving party's "failure to comply with Local Rule 56.1 is [a sufficient ground] for deeming admitted the facts contained in [the movant's] Rule 56.1 statement" and granting the motion. Taylor v. Local 32E Serv. Employees Int'l, Union, 286 F. Supp. 2d 246, 248 n.1 (S.D.N.Y. 2003) (Conner, D.J.), aff'd, 118 F. App'x 526 (2d Cir. 2004); Watt v. N.Y. Botanical Garden, 98 Civ. 1095 (BSJ), 2000 WL 193626 at *1 n.1 (S.D.N.Y. Feb. 16, 2000) (Jones, D.J.).  "A district court[, however,] has broad discretion to determine whether to overlook a party's failure to comply with local court rules," and, thus, "may . . . opt to conduct an assiduous review of the record even" when a party has not com-plied with Rule 56.1.  Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) (internal quotation marks omitted).

The Court of Appeals for the Second Circuit has further explained that

> in determining whether the moving party has met [its] burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving

14

party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion[s].

Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., supra, 258 F.3d at 74 ("The local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record.").  Finally, even when a summary judgment motion is unopposed, I must examine the record to determine whether a genuine issue of fact exists for trial; a summary judgment motion cannot be granted on default.  Jackson v. Fed. Express, 766 F.3d 189, 197-98 (2d Cir. 2014), accord Vt. Teddy Bear Co. v. 1-800 Beargram Co., supra, 373 F.3d at 244.

Given the strong preference in this Circuit for resolving cases on the merits, see, e.g., Jamison v. Fischer, 11 Civ. 4697 (RJS), 2012 WL 4767173 at *6 (S.D.N.Y. Sept. 27, 2012) (Sullivan, D.J.), I shall overlook the non-moving defendants' failure to submit a Rule 56.1 statement and review the record independently.  See Am. Med. Ass'n v. United HealthCare Corp., 00 Civ. 2800 (LMM), 2007 WL 1771498 at *3 (S.D.N.Y. June 18, 2007) (McKenna, D.J.) (conducting review of the record "to fill . . .

gaps" resulting from the nonmoving parties' failure to file a
56.1 counter-statement in response to movants' 56.1 statement);
Citibank, N.A. v. Outdoor Resorts of Am., Inc., 91 Civ. 1407
(MBM), 1992 WL 162926 at *4 (S.D.N.Y. June 29, 1992) (Mukasey,
D.J.) (declining to grant summary judgment based on nonmoving
party's failure to submit a Rule 56.1 statement).

    C.  Jurisdiction and
        Applicable Law

        Wilton cites 28 U.S.C. § 1335 as the basis for this
court's subject matter jurisdiction.  That statute grants dis-
trict courts original jurisdiction over interpleader suits where
diversity of citizenship exists between two or more adverse
claimants and the amount in controversy exceeds $500.  In inter-
pleader actions,

> a party in possession of a property, instrument or
> obligation subject to multiple claims may deposit the
> item at issue with the court.  The court has the au-
> thority to hear and determine the case, determine the
> rights of the rival claimants, discharge plaintiff from
> further liability, and restrain all parties from insti-
> tuting proceedings in any court regarding the property,
> instrument or obligation at issue.

Gen. Star Indem. Co. v. Custom Editions Upholstery Corp., 940 F.
Supp. 645, 649 (S.D.N.Y. 1996) (Mukasey, D.J.) (internal quota-
tions and citation omitted).  Venue is properly established in
the Southern District of New York pursuant to 28 U.S.C.

16

§ 1391(b), because both defendant Maisano and defendant Maisano-Cuzzo reside within the district.  The Court has personal juris-diction over the parties.

Because this interpleader action is dependent upon diversity of citizenship, New York state law governs the substan-tive issues in this case.  Cont'l Coffee Prods. Co. v. Banque Lavoro S.A., 852 F. Supp. 1235, 1237 (S.D.N.Y. 1994) (Leval, Cir. J.) ("Federal courts are bound by state law governing the rights of rival claimants to a given fund in interpleader actions brought under 28 U.S.C. § 1335."); see also First Metlife Inves-tors Ins. Co. v. Zikha, 08 Civ. 10113 (HB), 2009 WL 2999607 at *4 (S.D.N.Y. Sept. 21, 2009) (Baer, D.J.) ("In such diversity suits, federal courts are bound to apply state law."), citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78-79 (1938), aff'd sub nom., Patou v. Zilkha, 372 F. App'x 187 (2d Cir. 2010).  The parties do not dispute that the substantive law of New York, the forum state and place of contracting, applies.[7]

---

[7]Even if the law of Florida -- the final residence and place of death of the decedent -- were to apply, the outcome would be the same.  See Kowalski v. Jackson Nat. Life Ins. Co., No. 12-60597-CIV, 2013 WL 3308332 at *6 (S.D. Fla. July 1, 2013) (applying the more narrow rule of strict compliance with an insurance policy's change of beneficiary requirements, as opposed to New York's application of the doctrine of substantial compliance, and concluding mere intent is legally insufficient for the change to take effect).

D.   Relevant Terms of the Policy

The policy reserves to the owner the right to change beneficiaries (Compl., ¶ 14 and Ex. 1 annexed thereto ("Policy") ¶¶ 3.31, 3.35).  Under the policy, to effectuate a change of beneficiary, the insurer "must receive Written Notice informing [it] of the change.  Upon receipt and acceptance a change takes effect as of the date the Written Notice was signed" (Policy, ¶ 3.35 (emphasis added)).  "Written Notice" means "a written form satisfactory to [the insurer] and received by [the insurer] at [its] Home Office" (Policy, ¶ 1).

E.   Entry of Default
     Against Maisano & Schmidt

Wilton filed the interpleader complaint on August 8, 2013.  Maisano was personally served on August 15, 2013, and Schmidt was personally served on October 14, 2013 (Return of Serv. on Maisano, dated Aug. 19, 2013 (Docket Item 8); Return of Serv. on Schmidt, dated Oct. 14, 2013 (Docket Item 12)).  Maisano's answer to the complaint was due on September 5, 2013, and Schmidt's answer was due on November 4, 2013.  See Fed.R.Civ.P. 12(a).  The docket sheet demonstrates that neither has made an appearance or filed any answers or motions.  Moreover, the movants have alleged sufficient facts to support their arguments,

18

as discussed in Section III.F, <u>infra</u>.  Thus, Maisano and Schmidt
have failed to plead or otherwise defend, and I recommend (1)
that the clerk be directed to enter default against them[8] and (2)
that default judgment be granted against them.


    F.  Summary Judgment
       <u>Against Dardano</u>


      The movants next argue that the Last Accepted Change
Request is the only operative change-of-beneficiary form because
(1) the insurer had the right to require strict compliance with
its policies for change requests and the insured did not comply,
and (2) under the doctrine of substantial compliance, the in-
sured's submission of the Rejected Change Request was insuffi-
cient to effectuate the change in light of the three notices from
Wilton rejecting the request (Memorandum of Law in Support of
Defendants' Motion for Default and Summary Judgment, dated June
17, 2014, (Docket Item 27) ("Defs.' Mem.") at 5-6).

      Dardano argues that the insured intended the Rejected
Change Request to be effective, because it was important to her
to provide for her sister (Dardano Answer, at 1-2).  Moreover,

---

     [8]"Although Rule 55(a) contemplates that entry of a default
is a 'ministerial' step to be performed by the clerk of court, a
district court judge also possesses the inherent power to enter a
default."  <u>Peterson v. Syracuse Police Dep't</u>, 467 F. App'x 31, 33
(2d Cir. 2012), <u>citing</u> <u>Beller & Keller v. Tyler</u>, 120 F.3d 21, 22
n.1 (2d Cir. 1997).

Dardano states that she believes that the insured did not receive the first two notices from Wilton informing the insured that the change request was ineffective (Dardano Answer, at 1).

In order for a change-of-beneficiary request to take effect, the insured must strictly comply with the insurance contract.  <u>William Penn Life Ins. Co. of New York v. Viscuso</u>, 569 F. Supp. 2d 355, 364 (S.D.N.Y. 2008) (Conner, D.J.) ("Generally speaking, 'the method prescribed by the insurance contract must be followed in order to effect a change of beneficiary.'"), <u>quoting</u> <u>McCarthy v. Aetna Life Ins. Co.</u>, 92 N.Y.2d 436, 440, 704 N.E.2d 557, 560, 681 N.Y.S.2d 790, 793 (1998).  Here, Wilton refused to process the Rejected Change Request because it determined the insured did not submit the second page of her request, dated and signed, and did not properly allocate benefits by percentages (Compl., Ex. 20).  Defendant Dardano does not argue that the insured complied with the insurer's requirements.  Thus, I conclude that the insured failed to comply strictly with the insurance contract requirements for change-of-beneficiary requests.

However, the general rule of strict compliance is inapplicable where, as here, the insurer brings an interpleader action.

> [A]n insurer waives strict compliance with the policy provisions by bringing an action in inter-

20

pleader.  See, e.g., Lopez v. Mass. Mut. Life Ins. Co.,
170 A.D.2d 583, 566 N.Y.S.2d 359, 360 (App. Div. 1991).
. . . [.]  But interpleader does not waive the require-
ment that a change of beneficiary be in at least sub-
stantial compliance with the terms of the policy.  See
McCarthy, 92 N.Y.2d at 442, 681 N.Y.S.2d 790, 704
N.E.2d 557; In re Appleby, 14 Misc.3d 1208(A), 2006 WL
3758608, at *3-4, 2006 N.Y. Misc. LEXIS 3844, at *10
(N.Y.Sur.Ct. Dec. 22, 2006).  An insurance policy's
change-of-beneficiary requirements exist not only to
protect the insurer from multiple claims, but also to
"serve[ ] the essential goal of preventing the courts
and parties from speculating regarding the wishes of
the deceased."  McCarthy, 92 N.Y.2d at 442, 681
N.Y.S.2d 790, 704 N.E.2d 557.

       Under the doctrine of substantial compliance,
exact compliance with the terms of the policy will be
excused, and a change of beneficiary given effect,
where the insured took "an affirmative act or acts to
accomplish a change of beneficiary, and these affirma-
tive act or acts ... accomplished all that it was in
[the insured's] actual power to do to change beneficia-
ries."  Sun Life Assur. Co. of Canada (U.S.) v. Gruber,
2007 WL 4457771, at *18, 2007 U.S. Dist. LEXIS 92141,
at *56 (S.D.N.Y. Dec. 14, 2007) (citing McCarthy, 92
N.Y.2d at 440, 681 N.Y.S.2d 790, 704 N.E.2d 557; inter-
nal quotation marks and citations omitted).  The intent
of the insured is key to the inquiry, but proof of
intent alone is not enough:  the insured's intent must
have been thwarted by circumstances beyond his or her
control.  See id.; Schoenholz v. N.Y. Life Ins. Co.,
234 N.Y. 24, 29-30, 136 N.E. 227 (1922); Conn. Gen.
Life Ins. Co. v. Boni, 48 A.D.2d 621, 368 N.Y.S.2d 1, 3
(App. Div. 1975).  The insured must have done "all that
was reasonably possible to do to show his intention" or
have made "every reasonable effort to comply with the
policy requirements."  McCarthy, 92 N.Y.2d at 440, 681
N.Y.S.2d 790, 704 N.E.2d 557 (internal quotation marks
omitted).

William Penn Life Ins. Co. of New York v. Viscuso, supra, 569 F.

Supp. 2d at 365-66.

Under the substantial compliance doctrine, "courts have set a high bar for the affirmative acts that satisfy the specific-intent threshold and the allowable reasons for making an incomplete change. . . . 'New York require[s] the insured to do everything reasonably possible to change the beneficiary according to the policy terms.'"  Sun Life & Health Ins. Co. (U.S.) v. Colavito, 11 Civ. 5225 (KMK), 2014 WL 1613201 at *8 (S.D.N.Y. Mar. 28, 2014) (Karas, D.J.), quoting Prudential Ins. Co. of Am. v. Kamrath, 475 F.3d 920, 925 (8th Cir. 2007).  Courts will generally conclude the insured has met this standard where she was impeded from full compliance by death or serious mental or physical illness; "[b]y contrast, courts will not find substantial compliance when the insured had an unimpeded opportunity to comply with the policy's procedures but failed to do so."  See Sun Life & Health Ins. Co. (U.S.) v. Colavito, supra, 2014 WL 1613201 at *8 (collecting cases).

For example, in John Hancock Mut. Life Ins. Co. v. McManus, 247 A.D.2d 513, 513-14, 669 N.Y.S.2d 320, 321 (2d Dep't 1998), an interpleader action concerning the proceeds of two life insurance policies, the insured submitted a change-of-beneficiary form, and the insurer notified her that the form was unacceptable because she incorrectly completed it and sent her a new form. The insured died one month later without resubmitting the form.

22

247 A.D.2d at 514, 669 N.Y.S.2d at 321.  The Appellate Division
affirmed the trial court's determination that the insured failed
to change the policy's beneficiary because during the month prior
to her death, it was within the insured's power to properly
complete and resubmit the form and "[m]ere intent . . . is not
enough" to effectuate a change request.  247 A.D.2d at 514, 669
N.Y.S.2d at 321 (citation omitted).

     In contrast, the court in Cable v. Prudential Life Ins.
Co. of Am., 89 A.D.2d 636, 636, 453 N.Y.S.2d 86, 87 (3d Dep't
1982) concluded that the insured substantially complied where the
insurer notified the insured that his request was not processed
because he did not submit the policy for endorsement and the
insured told the insurer he would submit the missing document,
but then died the next day before doing so.  See also Union Cent.
Life Ins. Co. v. Berger, 10 Civ. 8408 (PGG), 2012 WL 4217795 at
*8-*9 (S.D.N.Y. Sept. 20, 2012) (Gardephe, D.J.) (concluding that
the insured substantially complied even though he did not obtain
consent from the original beneficiaries as required by the policy
because the insurer sent the insured confirmation of the change
twice without informing him of the error).

     Construing the facts in the light most favorable to
non-movant Dardano, I conclude that the insured did not substan-
tially comply with the policy's change-of-beneficiary procedures.

Dardano's contention -- that the insured's "last change is what she wanted" -- goes to the insured's intent (Dardano Answer, at 1-2).  Dardano states (1) that she believes the insured never received Wilton's first notice because the insured "would have tended to this matter promptly," (2) that she be-lieves that if the insured received Wilton's second notice she would have responded because it was important to the insured that she provide for Maisano and (3) that she believes that the insured wanted the Rejected Change Request to be effective (Dardano Answer, at 1).  These assertions of Dardano's own thoughts and beliefs as to insured's intent are insufficient evidence to raise an issue of material fact absent admissible facts to support those beliefs.  See Morris v. Lindau, 196 F.3d 102, 109 (2d Cir. 1999) ("[T]he non-moving party may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful." (internal quota-tion marks and citation omitted)), abrogated on other grounds by, Lore v. City of Syracuse, 670 F.3d 127 (2d Cir. 2012); Kuck v. Danaher, No. 07-CV-1390 (VLB), 2012 WL 4904387 at *7 (D. Conn. Oct. 16, 2012) ("It is axiomatic that a party must present facts not legal conclusions, personal belief, or speculation couched as facts to survive summary judgment."), aff'd sub nom., Kuck v.

24

Masek, 542 F. App'x 75 (2d Cir. 2013), cert. denied, -- S. Ct. --
, 2014 WL 4425164 (Nov. 3, 2014); see generally Fed.R.Civ.P.
56(c)(1)(A) (requiring that a non-moving party must support
assertions by "citing to particular parts of the materials in the
record" or by submitting affidavits or declarations based on
facts, not mere belief or speculation).  Even if there was
sufficient evidence of the insured's intent, "proof of intent
alone is not enough: the insured's intent must have been thwarted
by circumstances beyond his or her control."  William Penn Life
Ins. Co. of New York v. Viscuso, 569 F. Supp. 2d at 366.

Even if I assume the accuracy of Dardano's belief, for
which she has provided no factual basis, that the insured did not
receive the March 18, 2010 and December 29, 2010 notices from
Wilton, there is no dispute that the insured received the October
10, 2011 notice from Wilton,[9] informing her that it needed fur

---

[9]Even if the insured did not receive any of the notices,
this was not the first time she requested a change in
beneficiary.  She submitted at least eight requests, including
the two at issue here, three which were accepted and five which
were rejected.  For each acceptance or rejection prior to the
Rejected Change Request, the insured received a notice from the
insurer (see Compl., Exs. 4, 6, 8, 10, 12, 14 & 16).  By failing
to confirm Wilton's receipt and processing of her request, the
insured did not do all she could to effectuate the change.  See
e.g., MetLife Life & Annuity Co. of Connecticut v. Sobie, 326 F.
App'x 3, 5 (2d Cir. 2009) (concluding insured did not do all she
could to effectuate change request that she signed three years
before death, in part, because she never confirmed its receipt by
the insurer); Prudential Ins. Co. of Am. v. Kamrath, supra, 475
(continued...)

ther specific information to process her incomplete request and identifying the information she needed to submit for the request to be effective (see Compl., Ex. 20).  The insured died on December 27, 2012, almost fourteen months after Wilton sent that third notice.  There is no evidence suggesting that circumstances beyond the insured's control prevented her from submitting a proper change request during this time.[10]  As in John Hancock Mut. Life Ins. Co., supra, 247 A.D.2d at 514, 669 N.Y.S.2d at 321, where one month was sufficient time for the insured to correct her mistake, here too, the insured had ample time during that fourteen-month period to resubmit a proper request.  Thus,

---

[9](...continued)
F.3d at 925 (applying New York law, determining that the insured did not do "everything possible" to effectuate the change "when he could have verified with [the insurer] that it had changed the beneficiary").

[10]While it seems that the insured may have been ill with a terminal disease, cancer, during at least a portion of this time (see Compl., Ex. 21), no evidence has been offered to suggest that her illness rendered her unable to submit a proper change request.  Compare William Penn Life Ins. Co. of New York v. Coleman, 28 Misc. 3d 1234(A), No. 026723/09, 2010 WL 3540078 at *3 (N.Y. Sup. Ct. Sept. 8, 2010) (concluding that the insured, suffering from advanced lung cancer, did everything in his power to effectuate the intended change and substantially complied where, within the same month, the change request was submitted, the insured died and the insurer later received and rejected it as flawed), with John Hancock Mut. Life Ins. Co. v. McManus, supra, 247 A.D.2d at 514, 669 N.Y.S.2d at 321 (concluding that the insured did not meet the standard because it was within the her power to resubmit the form the month between rejection of her request and her death).

Dardano has failed to show that the insured did "everything reasonably possible to change the beneficiary according to the policy terms." Sun Life & Health Ins. Co. (U.S.) v. Colavito, supra, 2014 WL 1613201 at *8 (internal quotation marks and citation omitted).

In light of the foregoing, Dardano has failed to present evidence of issue of fact as to whether the insured actually or substantially complied with Wilton's change-of-beneficiary request procedures. Thus, I conclude that the primary beneficiaries of the policy are Walter F. Garbrecht, Jr., minor D.G., Joshua Rodriguez and Renee Maisano-Cuzzo, pursuant to the Last Accepted Change Request.

This conclusion does not, however mean that the beneficiaries shall receive the sum total of the proceeds deposited with the Clerk of Court at this time. Also pending before this Court is Wilton's counsels' motion for fees and costs (Notice of Motion for Dismissal and Attorneys [sic] Fees, dated July 1, 2014 (Docket Item 31) ("Pl.'s Motion for Fees")). "With respect to fees, a federal district court 'has discretion to award reasonable attorneys' fees and costs to a disinterested stakeholder in an action brought under the interpleader statute.'" New York Life Ins. Co. v. Aleandre, 13 Civ. 2384, 2014 WL 30508 at *4 (S.D.N.Y. Jan. 2, 2014) (Sweet, D.J.), quoting Guardian Life Ins.

Co. of Am. v. St. Ange, 11 Civ. 3468 (PKC), 2012 WL 463894 at * 2
(S.D.N.Y. Feb. 8, 2012) (Castel, D.J.).  Wilton's attorneys
request $10,654.00 in fees and $954.90 in costs, totaling
$11,599.90, through April 1, 2014 and explain that it may be
necessary to file a supplemental request for payment of their
more recent, un-invoiced litigation expenses (Declaration of
Jaime M. Merritt, dated July 1, 2014, annexed as Attachment 1 to
Pl.'s Motion for Fees, at ¶¶ 31-33).  In order to ensure that
sufficient funds are available to pay Wilton's counsels' final
fees and costs, including those to which they may be entitled to
for work post-April 1, 2014, the Clerk of Court should be di-
rected to maintain $15,000 of the Funds in the Court's Registry
until Wilton's motion for fees and costs is resolved and to
immediately distribute the balance of the Funds, minus the
$15,000 reserve, to the beneficiaries as allocated by the insured
in the Last Accepted Change Request.

       Finally, to the extent that movants seek to enjoin the
non-moving defendants from bringing future actions asserting
claims to the proceeds of the policy, it appears that the doc-
trine of collateral estoppel would foreclose any future claims to
the proceeds brought against any successful parties by the
unsuccessful parties (see Defs.' Mem., at 7).  See Glenclova Inv.
Co. v. Trans-Resources, Inc., 874 F. Supp. 2d 292, 304 (S.D.N.Y.

2012) (Keenan, D.J.) (stating that once a court determines the beneficial ownership of property in an interpleader action, "that judgment will have preclusive effect in any other court where the parties have raised the matter -- be it through res judicata or collateral estoppel").

IV.  Conclusion

For all of the foregoing reasons, I respectfully recommend that the court direct the Clerk of Court to enter the defaults of defendants Joyce R. Maisano and Suzanne Schmidt, grant plaintiff's motion for default judgment against Maisano and Schmidt and grant summary judgment on movants' claim to the proceeds of the policy against defendant Gail Dardano (Docket Item 25).

I further recommend that the Clerk of Court be directed to pay all but $15,000 of the balance of the interest-bearing account, representing the benefits due under the policy and interest earned that Wilton deposited in the Court's Registry, to the beneficiaries named in the Last Accepted Change Request, allocated as follows:  (1) 62.5% to Walter F. Garbrecht, Jr., (2) 12.5% to Walter F. Garbrecht, Jr., on behalf of minor D.G., (3) 12.5% to Joshua Rodriguez and (4) 12.5% to Renee A. Maisano-Cuzzo.  Finally, I recommend that the Clerk of Court be directed

29

to maintain the remaining $15,000 in the Court's Registry until such time as Wilton's motion for fees and costs is resolved, after which any remaining Funds should be distributed to the named beneficiaries as allocated above.

V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Richard J. Sullivan, United States District Judge, 40 Foley Square, Room 2104, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge Sullivan.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair

<u>Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir. 1988); <u>McCarthy v. Manson</u>, 714

F.2d 234, 237-38 (2d Cir. 1983) (<u>per curiam</u>).

Dated:   New York, New York
         November 12, 2014

                              Respectfully submitted,


                              _____
                              HENRY PITMAN
                              United States Magistrate Judge


Copies mailed to:

Jaime M. Merritt, Esq.
White and Williams LLP
One Penn Plaza
New York, New York 10119

Vincent Gelardi, Esq.
Gelardi & Randazzo LLP
Suite S-608
800 Westchester Avenue
Rye Brooke, New York 10573

Ms. Renee A. Maisano-Cuzzo
105 Deer Crossing Lane
Port Jervis, New York 12771

Ms. Gail Dardano
672 Preston Avenue
Deltona, Florida 32738

Ms. Joyce R. Maisano
2 End Place
Scarsdale, New York 10573

Ms. Suzanne Schmidt
2365 88th Court
Vero Beach, Florida 32966